Okay, well, we're going to switch places. I know you're both ready for it, but as you can see, we've had a change in our panel in that Justice Moore could not be here. So we're going to call the case of Marcus Powell, 512-0258 and 513-0200. I'm sorry to shift you all around. Justice Moore had to leave, but I do want to say for the record that, as you know, the arguments are available on the Internet. And so I want to assure you that Justice Moore has indicated that he will listen to the arguments, despite the fact that he was called away. So having said that, let's proceed. The appellant has, as I understand it, waived argument, and he states the affidavit. Thank you, Mr. Attorney. You may proceed. May I please the Court? Jennifer Hanlon on behalf of the people. I'm here today because I want to answer a couple points in the reply brief and, of course, to answer any questions that the Court might have on this case. And before I launch into my prepared statements, I'll just say that I won't, at the time allotted, be able to respond to everything in the reply brief to which I would like to respond, but that the State's answer brief is actually quite responsive to most of the factual or legal claims of the reply brief to which I'd like to respond. So I would refer the Court back to the State's answer brief in response to the defendant's reply brief. But a couple points that are not in the people's answer brief that I want to make in response to the reply brief are these. The reply brief at page 32 states that Detective Janus' report, that's people 70, was not admitted into evidence. I call the Court's attention to page 1256 of the record in which the Court admitted all exhibits used up to that point except for people 75. The report, people 70, had been used prior to that point. Detective Janus identified it and used it as people 70, and that's at record page 472. Next point is that the reply brief at page 29 states that the prosecutor in closing argument used her own special knowledge as Assistant State's Attorney when saying that police lie to witnesses to get the truth from them. First, this claim wasn't raised in the opening brief as error, so it's forfeited under Rule 341. Second, this information didn't come from the Assistant State's Attorney's personal knowledge, but from Defense Counsel's direct examination of Detective Ward. The record site on that is record 1341. It's also discussed in the people's answer brief at page 111. Next, there was an unreported sidebar during voir dire. The State argued in the answer brief that the silence in the record about what occurred during that sidebar should be construed in favor of the State. The reply brief at page 41 states that that omission in the record shouldn't automatically be construed in the State's favor, but should be corrected under Rule 329. The people's response is that it's the defendant's burden to provide the Court with the full record on appeal. So ambiguity or silence is construed against the appellant. The next point is that the reply brief at page 1, footnote 2, states that the defendant's neck tattoo did not stretch past his jawline and refers the Court to a picture of the defendant in the appendix of the reply brief. That's the picture from the Department of Correction's website. My response to that is that the profile picture of the defendant in the appendix of the reply shows the tattoo on the right side of his neck. The defendant had tattoos on both sides of his neck. The people were referring to the tattoo on the left side of his neck, which goes up higher, up behind his ear, if memory serves. And a picture of that tattoo can be seen in People's Exhibit 101, which is in the record. It was the left side that was at issue in this case. On that issue, there was a question about whether or not, what evidence was in the record, whether or not this 2008 booking photograph was in the record. The Court on the motion for a new trial, the trial court got into this. But is that 2008 booking photograph in the record? No, Your Honor, it is not. And I believe that in the reply brief at page 1, actually in footnote 1, the defense stops calling the photo the 2008 booking photo and just calls it the 2008 photo. In fact, the people discussed the facts leading to this admittably complex issue in the answer brief. And at one point, parties on both sides agreed that the 2008 booking photo was not admitted into evidence. No, Your Honor, it's not. It's not in the record. What's in the record is the defendant's 2011 booking photo. That's the photo of the admission of which the defendant is contesting in this issue 1. The other photo that is in the record is an undated mugshot of the defendant that was shown to defense witness Ellen Hecker a couple days after or the next day, sorry, after the murder. That was not his 2008 booking photo because the defendant at the time that Hecker was shown this photo of him had not been arrested for these charged crimes. So it was not a photo of him taken upon his arrest for these crimes. It was a photo that police had of him before he was arrested for these charged crimes. So it's undated. So that's another point that I wanted to raise here today is that the reply brief backs away from calling that photo the 2008 booking photo but calls it instead the 2008 photo, which I also contest because while we know that Hecker saw it in 2008, we don't know when it was taken. It could have been taken prior to 2008. Does that answer your question? It does. Thank you. Moving on, the reply brief on page 3 states that the state never proved that the defendant had that neck tattoo at the time of the shooting. I'd refer the court generally to the discussion of the facts in the people's answer brief and point out that it was the defendant that prevented the state from showing the jury the 2008 booking photo taken just a couple days after the crime, after his arrest for the charged crime. Also, I want to note that the judge in this case stated when he denied the defendant's post-trial motion that the record on this issue is incomplete. And that's at record page 1549. It goes into detail about what he's thinking there. Next, the state in the answer brief argued that a plain error review was applicable here in this issue regarding the admission of the 2011 photo. The reply brief contests this, saying that a defendant objected to the 2011 photo and that it would have been futile to object to it again after the state had used it, that the objection would have fallen on deaf ears. People's response is that the defendant objected to this 2011 photo when it was shown to the jury. Then after, again, some sidebars that are discussed in the people's answer brief, after the judge limited the state to using the 2011 photo and barred the 2008 booking photo, the defendant said no objection when the state offered the 2011 photo into evidence. So the defendant there could have preserved the objection to the admission of the 2011 photo, but seemed content that only the 2011 photo be used. The issue was whether, the judgment issue was whether the jury might be confused by the use of multiple photos of the defendant. Before I move on from that issue, does the court have any further questions about it? I do not. The reply brief at page 9 states that informant Williams benefited by coming forward. The facts on that are discussed in the people's answer brief, but they boil down to the fact that all he got for testifying was a trip to the courthouse. There's no evidence of any benefit from either coming forward or testifying. The reply brief at page 12 states that Lester Smith's credibility is also in doubt. Smith also received no benefit for testifying. In fact, he had a motive not to testify. His aunt had adopted the defendant, so they were actually cousins. Next, the state's answer brief argued that the defendant opened the door to the use of a demonstrative exhibit. The reply brief takes issue with that, saying that the state first raised exhibit 75, and that's a firearm, in the examination, in its examination of Cortez Davis, so that the defendant didn't open the door to its use. While it's true, and here's my response, while it's true that the state used that then proposed exhibit in questioning Davis, the state then, after the conclusion of that testimony, conceded that Davis' testimony did not support the admission of that firearm as substantive evidence against the defendant. What happened then was that on cross-examination of an informant of Nicholas by the defense, the defendant elicited for the first time evidence that the defendant told Nicholas that police found no shells at the scene of the Skeene Street murder because of a shell catcher that was on the firearm that he used. And the people argue in the answer brief that this opened the door to evidence of how a shell catcher worked on a .223 caliber firearm, and therefore the use of the demonstrative exhibit to show the jury how that worked. On that same point, the defendant argues in the reply brief on page 46 and 47 that there was no need to show the jury the firearm to explain how it worked. The state said there was, and the judge agreed, and that's how the witnesses did it. Okay, thank you very much. This case will be taken under advisement, and this position will be issued in due course.